IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHIRLEY B. MCNEILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10-cv-00400 |
| | ) | |
| BOARD OF GOVERNORS OF THE | ) | |
| UNIVERSITY OF NORTH CAROLINA - | ) | |
| CONSTITUENT N.C. A&T STATE | ) | |
| UNIVERSITY, | ) | |
| Defendant. | ) | |

**ORDER and MEMORANDUM OPINION**

CATHERINE C. EAGLES, District Judge

Plaintiff Dr. Shirley McNeill filed an action against her employer, Defendant N.C. Agricultural and Technical State University ("**N.C. A&T**"), alleging that N.C. A&T discriminated against her on the basis of her gender and retaliated against her for filing charges with the Equal Employment Opportunity Commission ("**EEOC**"). N.C. A&T filed a motion for summary judgment. Dr. McNeill concedes her gender discrimination claims should be dismissed, but contends she is entitled to a trial on her retaliation claims. Because Dr. McNeill has not established that any adverse action taken against her was in retaliation for her claims of gender discrimination, the motion for summary judgment will be granted.

I. **BACKGROUND**

After working for the N.C. A&T Cooperative Extension program for over three decades in non-administrative positions, Dr. McNeill was appointed the interim Regional Program Coordinator ("**Coordinator**") for the Cooperative Extension Program in 2004. (Docs. 22-1 and

15-3 Exh. 1.) She was permanently promoted to this administrative position in 2005. (*Id.* and Doc. 15-3 Exh. 2.)

Around this same time, the State of North Carolina made funds available to bring the salaries of personnel in non-administrative positions closer to market level. (Doc. 15-1; Doc 15-2.) When Dr. McNeill did not initially receive this "market value equity increase" in her salary, she complained, arguing she should receive the increase because she spent most of her career in non-administrative positions. (*Id.*; Doc. 15-3 Exh. 5.) N.C. A&T then made a small salary adjustment to reflect the time that Dr. McNeill worked in a hybrid role as a Coordinator and non-administrative specialist. (Doc. 15-1; Doc. 22-3 Exh. 2.) Dr. McNeill was not satisfied with the adjustment and continued to object to N.C. A&T's refusal to provide her with a larger market value equity increase. (Doc. 15-3 Exhs. 22 and 23.)

In January 2009, Dr. McNeill first asserted that N.C. A&T's decision on her market value equity increase was also a gender issue. (Doc. 22-13.) In April 2009, she contacted N.C. A&T's Equal Employment Office , (Doc. 15-1 ¶32; Doc. 15-3 Exh. 21) and she ultimately filed a charge with the EEOC in June 2009. (Doc. 15-3 Exh. 20.)

For the first three years she worked as a Coordinator, Dr. McNeill's performance reviews were lower than her historical performance reviews (Doc. 15-1; Doc. 15-2; Doc. 22-1 ¶10) but still satisfactory. (Doc. 15-3 Exhs. 8-13.) In December 2008, however, she fell below the satisfactory level[1] and was ineligible for a raise. (Doc. 15-3 Exhs. 14 and 15.) In December 2009, Dr. McNeill received her second unsatisfactory performance review, which again precluded her from receiving a merit based increase in her salary, and she was placed on

---

[1] Dr. McNeill first learned of her unacceptable performance review in December of 2008. (Doc. 15-1 ¶25; 22-1 ¶12.) Thereafter, in late January 2009, Dr. McNeill received written confirmation of her unacceptable performance review. (Doc. 15-3 Exh. 14.)

2

probation. (Doc. 15-3 Exh. 16 and 17.) Her supervisor inquired "as to whether [Dr. McNeill] felt this position was a good fit," and expressed a willingness to discuss whether Dr. McNeill might work in another "capacity." (*Id.*) Dr. McNeill considered the suggestion a threat of demotion or termination. (Doc. 15-4 at 129-30.)

On March 15, 2010, Dr. McNeill filed a second charge with the EEOC. (Doc. 15-3 Exh. 21.) This charge alleged that N.C. A&T retaliated against Dr. McNeill for filing her first EEOC charge. Dr. McNeill filed this lawsuit in May 2010. (Doc. 1.)

## II. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The initial burden is on the movant to show the absence of a genuine dispute of material fact. *Id.*; *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991). If that burden is met, the non-movant then must show that there is a genuine dispute of material fact and present more than a mere scintilla of evidence supporting the non-movant's case. *See Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

## III. RETALIATION

Dr. McNeill alleges that N.C. A&T retaliated against her in several ways in violation of Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. §§ 2000e to 2000e-17. Title VII provides, in pertinent part, that:

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful practice by this title, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this title.

42 U.S.C. § 2000e-3(a).

3

Retaliation claims without direct evidence are evaluated under the three-step burden-shifting process established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate some legitimate non-discriminatory reason for any adverse action. *See Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006). If the defendant articulates a non-discriminatory explanation, the burden shifts back to the plaintiff to show that the defendant's proffered explanation is pre-textual. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). A plaintiff can prove pretext by showing that the explanation is unworthy of belief or by offering other evidence of retaliation. *Id.*

Dr. McNeill contends that after she filed a charge with the EEOC, N.C. A&T retaliated against her by giving her poor performance reviews which affected her eligibility for raises, resulted in probation, and included a threat of termination. (Doc. 22 at 4.) In her deposition, she made other allegations concerning decisions made about her travel, transportation, and technology. (Doc. 15-4.)

### A. PERFORMANCE REVIEWS AND PROBATION

In the years immediately after Dr. McNeill became a Coordinator, she received performance reviews on the low end of the satisfactory range. In December 2008, Dr. McNeill received her first unsatisfactory performance review. In January 2009 in a letter to the Chair of the N.C. A&T Board, she first complained to her employer of gender discrimination, and in June

4

2009, she filed an EEOC charge. In December 2009, she received her second unsatisfactory performance review.

### 1. Protected Activity

Under Title VII, "protected activities fall into two distinct categories: participation or opposition." *Laughlin*, 149 F.3d at 259. The statute itself defines activities which are protected participatory activity: "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding or hearing under Title VII." *Id.* (citing 42 U.S.C. § 2000e-3(a)). These enumerated activities are "vigorously protected to ensure employees' continuing access to the EEOC and the enforcement process." *Laughlin*, 149 F.3d at 259 (4th Cir. 1998). Dr. McNeill engaged in participatory protected activity when she filed her EEOC charge in June 2009.

Oppositional activity, by contrast, "need not rise to the level of formal charges of discrimination." *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981). Oppositional activity "has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures." *Id.* Dr. McNeill engaged in oppositional protected activity when she wrote a letter to the chair of N.C. A&T's Board in January 2009 about her employer's alleged gender discrimination.

### 2. Adverse Action

An employment action is adverse in the context of a retaliation claim if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). This is a more flexible standard than the one which applied in the Fourth Circuit before *Burlington* was decided. *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 n.2 (4th Cir. 2007)

5

Case 1:10-cv-00400-CCE -PTS Document 28 Filed 09/14/11 Page 5 of 12

(explaining that the Supreme Court "rejected our circuit's formulation of the second element of the prima facie case").

Dr. McNeill contends that the unsatisfactory performance reviews she received, which prevented her from receiving a raise and which were accompanied by what she characterizes as a threat of termination, constituted adverse employment action. N.C. A&T contends that: 1) she was not precluded from receiving a raise because no state employees received a raise in the relevant time frame; and 2) she was not threatened with termination. Neither of these arguments have merit.

Before the Supreme Court's decision in *Burlington*, a negative performance evaluation alone was not sufficient to establish a material adverse action. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371 (4th Cir. 2004). *Burlington* clearly changed the standard against which evidence is to be evaluated in this area. *Lettieri*, 478 F.3d at 650 n.2. Now, "the significance of any given act of retaliation will . . . depend upon the particular circumstances." *Burlington*, 548 U.S. at 69.

The Court need not decide the hypothetical question of whether a negative performance evaluation alone is sufficient, since Dr. McNeill has offered additional evidence. It is undisputed that the December 2009 unsatisfactory performance review precluded Dr. McNeill from receiving a merit raise in her salary in 2010, and it is undisputed that after this evaluation she remained on probation.

Even before the Supreme Court's decision in *Burlington*, negative financial consequences were routinely held to be an adverse action. *See James,* 368 F.3d 371. Since *Burlington,* other courts have held that negative evaluations which affect pay are a materially adverse action. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 403 (6th Cir. 2008); *cf. Wells v. Gates*, 336

6

Fed. App'x 378, 384 (4th Cir. 2009) (loss of sick leave is materially adverse action). While it may be that no state employee got a raise in 2010 due to state budget issues, and thus Dr. McNeill ultimately was not harmed in her pocketbook by the evaluation, that is not necessarily the end of the issue. There is no evidence to establish that at the time of Dr. McNeill's December 2009 review she knew that no state employees would receive raises regardless of evaluations. A poor performance review which definitively precludes an employee from receiving a raise if funds are available could easily dissuade a reasonable worker from making a claim of discrimination.

On top of this, Dr. McNeill remained on probation for a second year and was told by her supervisor that "we must make some changes." (Doc 15-3 at page 41.) This statement by Dr. McNeill's supervisor is not necessarily a "threat of termination," and the record is not clear as to the specific effects of being on probation, but the normal interpretation of the word "probation" is certainly negative. A jury could find that under these cumulative "particular circumstances," a reasonable employee in Dr. McNeill's position may well have been "dissuaded . . . from making or supporting a charge of discrimination." *Burlington,* 548 U.S. at 68 (2006).

### 3. Causal Connection

Dr. McNeill must establish a causal connection between the adverse conduct and the protected activity. This can be established by direct evidence, but more commonly is shown when there is evidence that "the employer takes adverse employment action against an employee shortly after learning of protected activity." *Price*, 380 F.3d at 213.

N.C. A&T contends that Dr. McNeill cannot meet this portion of the prima facie case because the alleged adverse employment actions were separated from actions of protected activity by considerable periods of time. (Doc. 16 at 14.) The Court agrees.

Dr. McNeill received her first poor performance review in 2008, (Doc. 15-1; Doc. 15-3 Exh. 22), well before she first complained of gender discrimination in January 2009 or filed the EEOC charge in June 2009.   N.C. A&T could not have retaliated against Dr. McNeill in 2008 for something she did not complain about until 2009.  In fact, Dr. McNeill's first EEOC charge filed in June 2009 – well after her January 2009 letter and the bad 2008 evaluation - did not mention retaliation. (Doc. 15-3 Exh. 20.)  Her second EEOC charge in 2010 claimed that the retaliation began after she filed the first charge in June 2009 and made no claims as to retaliation for her January 2009 letter.  (Doc. 15-3 Exh. 21.)  Finally, in her affidavit in opposition to the motion for summary judgment Dr. McNeill blames her bad 2008 evaluation on factors other than retaliation. (Doc. 22-1 ¶12.)

Thus, the first adverse action by N.C. A&T occurred in December 2009, when Dr. McNeill received her second unsatisfactory performance evaluation.  (Doc. 15-3 Exh. 16.)  This was eleven months after her first gender discrimination claim and six months after her first EEOC charge was filed.

As the Supreme Court has noted, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality . . . uniformly hold that temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see also Causey v. Balog*, 162 F.3d 795, 803) (4th Cir. 1998)(13-month period insufficient); *Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001); *Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.3d 1168, 1174-1175 (7th Cir. 1992) (4-month period insufficient).  Action taken eleven months later, as is the case here, "suggests, by itself, no causality at all." *Clark, 532 U.S. at 273; see Dowe v. Total Action Against Poverty in*

*Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a cause connection exists.")

Where temporal proximity is missing, a plaintiff may use other relevant evidence to establish causation. *See Causey*, 162 F.3d at 803. Specifically, the Court "may look to the intervening period for other evidence of retaliatory animus." *Lettieri*, 478 F.3d at 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000). Dr. McNeill, however, points to no other direct or circumstantial evidence to support her claim of a causal connection.

Because there is insufficient proof of a causal connection, Dr. McNeill has failed to establish a prima facie case for retaliation.

### 4. Legitimate Non-Discriminatory Reason and Pretext

Even if Dr. McNeill had established a prima facie case, she cannot prevail on her claim of retaliation because N.C. A&T has articulated a non-discriminatory reason for Dr. McNeill's poor performance reviews and Dr. McNeill has not shown that the proffered explanation is a pretext for retaliation. N.C. A&T has offered evidence that Dr. McNeill's poor performance ratings in 2008 and 2009 were part of a trend of declining performance since she became a Coordinator. (Doc. 15-1.) In 2005, 2006 and 2007, Dr. McNeill received performance ratings which only warranted a half-increase in merit pay. (*Id*.) N.C. A&T has also proffered evidence that Dr. McNeill's performance was adversely impacted by her work schedule in which she only came into the office three days a week, and by substantial absences. (Docs. 15-1 and 15-2.)

All the evidence indicates that Dr. McNeill's superiors believed her work was unsatisfactory. The decision-maker's belief is important, not Dr. McNeill's self-assessment that

her work was fine.  *See Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.") (internal quotation marks and citation omitted); *accord Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011).

Dr. McNeill has offered no evidence that the facts on which her supervisors based the poor evaluation are untrue.  Indeed, Dr. McNeill does not challenge N.C. A&T's assertion that she missed work an average of sixty-seven days per year.  (Docs. 15-1, 15-2 and 15-4 at 122.) While "[w]orkers are shielded from retaliation on account of their assertion of rights protected under Title VII," they "are not thereby insulated from the consequences of . . . poor performance." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2009) (concerning a worker reprimanded for abusing sick leave).

Because N.C. A&T offers a legitimate nondiscriminatory reason for Dr. McNeill's performance reviews and because Dr. McNeill has offered no evidence to contradict this explanation for her poor reviews, N.C. A&T is entitled to summary judgment.

### B.  TRAVEL, TECHNOLOGY, AND A STATE CAR

In her deposition and in her affidavit offered in opposition to the motion for summary judgment, Dr. McNeill testified about a number of other issues which she claims show retaliation by N.C. A&T.  While she did not address these issues in her brief and has arguably waived them, *see* FED. R. CIV. P. 56(e), the Court will address them in its discretion.

Dr. McNeill alleges that one of her travel requests in 2009 was not approved in retaliation for the EEOC charge.  However, she admits that she made a mistake in her request by seeking three days for travel when the trip only required two days.  (Doc. 15-4 at 36-37.)  Dr. McNeill also alleges that she was prohibited from going to a conference once, but admits that neither of

the other two Coordinators attended the conference and the one Coordinator who received approval was initially going because she was a speaker at the conference. (Doc. 15-4 at pp. 46-47.)

Dr. McNeill also complains that she requested a new laptop and printer, but her requests were denied. (Doc. 15-4 at pp. 40-44.) The evidence establishes without dispute that the state provided new laptops and printers only when funds were available and that funds were not available when Dr. McNeill made her request. (Doc. 15-1 at ¶36.) Dr. McNeill admitted that she was unaware of other employees receiving new laptops on request, and that when everyone else in her office got a new computer, she received one as well. (Doc. 15-4 at p. 41.) Dr. McNeill has not shown that the timing of the denial of her requests was close to the time she made her claims of gender discrimination.

Finally, Dr. McNeill alleges that she was retaliated against because she was not assigned a state car for personal use like employees at North Carolina State University. (Doc. 15-4 at p. 48.) Dr. McNeill admits, however, that she works for N.C. A&T and that no employees in her position at N.C. A&T are assigned a state car for personal use. (Doc. 15-4 at pp. 48-51.)

None of these incidents constitute materially adverse actions. *Burlington*, 548 U.S. at 68 ("[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.") This is so even when they are viewed cumulatively. *See Hicks v. Baines*, 593 F.3d 159, 165 (2nd Cir. 2010) (discussing the need to consider actions of retaliation both separately and in the aggregate). Nor is there any evidence of a causal connection between these actions by N.C. A&T and her complaints of gender discrimination.

11

Finally, as to each action, N.C. A&T has shown a legitimate non-discriminatory reason for its challenged action, and Dr. McNeill has not shown how any of these reasons is a pretext for retaliation. Therefore, N.C. A&T is entitled to summary judgment as a matter of law as to these aspects of her claims.

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 15) is **GRANTED**.

This the 14th day of September, 2011.

_____
United States District Judge